DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| BARBARA RICHARDS, ANNETTE WOODLEY, PAULETTE RAWLINS, NICOLE HODGE, SHIRLEY JONES, CHERYL HUYGHUE, COLETTE BROWNE, CAROL NATHANIEL, LAVERNE OLIVE, MILLICENT FRANCIS, BRENDA BRIDGES, CLAUDIA TODMAN, PATRICK AUGUSTINE, YOLANDO BELLE, CHARMAINE JOSEPH, RAMONA ALLAMBY, CHARRISIA BENJAMIN, NICKISHA BIRMINGHAM, GAIL BLACKWOOD, ALENA BRATHWAITE, NICOLE EDDY, CHERYL KUNTZ, SHANIK MANNERS, ALANA MONSANTO, CATHERINE PERCEL, MARIA RICHARDSON, LE'TISHMA SMITH, SANDRA D. SMITH, TIFFANNE SUTTON, SELANE THOMAS, CHERYL VAN PUTTEN, MARIE VANTERPOOL, and GLENROY WARNER, ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Civil No. 2009-23 |
| ALFRED MARSHALL and SYDNEY KATZ d/b/a A&S REALTY ASSOCIATES, ) ) ) | |
| Defendants. ) ) | |

ATTORNEYS:

**K. Rick Alvis, Esq.**
Alvis & Willingham
Birmingham, AL
**Vincent A. Collianni, II, Esq.**
Colianni & Colianni
St. Croix, VI
    *For the plaintiffs,*

**Robert L. King, Esq.**
Law Offices of Robert King
St. Thomas, VI
    *For the defendants.*

## MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court is the renewed motion of the plaintiffs for partial summary judgment. The defendants oppose the motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs, Barbara Richards, Annette Woodley, Paulette Rawlins, Nicole Hodge, Shirley Jones, Cheryl Huyghue, Colette Browne, Carol Nathaniel, Laverne Olive, Millicent Francis, Brenda Bridges, Claudia Todman, Patrick Augustine, Yolando Belle, Charmaine Joseph, Ramona Allamby, Charrisia Benjamin, Nickisha Birmingham, Gail Blackwood, Alena Brathwaite, Nicole Eddy, Cheryl Kuntz, Shanik Manners, Alana Monsanto, Catherine Percel, Maria Richardson, Le'tishma Smith, Sandra D. Smith, Tiffanne Sutton, Selane Thomas, Cheryl Van Putten, Marie Vanterpool, and Glenroy Warner (collectively, the "Plaintiffs"), are or were employed by the Virgin Islands Bureau of Internal Revenue (the "VIBIR").

During the course of the Plaintiffs' employment with the VIBIR, the VIBIR leased a building located at 9601 Estate Thomas, St. Thomas (the "Marshall Building") from the defendants, Alfred Marshall ("Marshall") and Sydney Katz ("Katz"), doing business as A&S Realty Associates (collectively, "A&S Realty").

While working in the Marshall Building, the Plaintiffs began experiencing respiratory problems, headaches, nausea, and various other symptoms. The Plaintiffs claim that these symptoms were caused by an unusually high number of mold spores in the air inside the Marshall Building. This high mold count was allegedly due to improper construction of the building, which allowed the mold to fester, and poor ventilation, which failed to remove the particulates from the building's air supply.

The Plaintiffs initiated this action on February 10, 2009. The Amended Complaint asserts one count of negligence against A&S Realty.

On June 9, 2009, another former VIBIR employee named Lorraine Smith ("Smith") filed a complaint against Marshall and Katz[1] in the Superior Court of the Virgin Islands (the "Smith Case"). Smith, like the Plaintiffs in the instant case, asserted that the mold spores in the Marshall Building caused her to suffer various ailments. Specifically, Smith asserted, among other things, that Marshall and Katz, as lessors, negligently failed to use reasonable care to protect from a harmful condition, and that Marshall and Katz negligently failed to warn Smith of this condition.

The Smith Case was subsequently removed to this court. A jury trial commenced on June 11, 2012. On June 15, 2012, on

---

[1] Smith did not name A&S Realty as a separate defendant, unlike the Plaintiffs in this case.

motion of Smith, all counts against Marshall were dismissed. On June 18, 2012, the jury returned a verdict in favor of Smith and against Katz as to the counts of negligent failure to protect from a harmful condition and negligent failure to warn. Katz timely moved for judgment as a matter of law and for a new trial. On October 11, 2012, the Court entered judgment in accordance with the jury verdict without denying Katz's motions for judgment as a matter of law and a new trial. Thereafter, Katz moved for remittitur.

On November 7, 2012, the Plaintiffs moved for summary judgment in this case on the ground that, given the verdict in the Smith Case, A&S Realty was collaterally estopped from denying its negligence. The Court denied that motion on January 8, 2013, noting that Katz's various post-trial motions remained pending.

On March 22, 2013, the Court denied Katz's motions for judgment as a matter of law and for a new trial in the Smith Case, and granted in part Katz's motion for remittitur.

The Plaintiffs now renew their motion for summary judgment on the ground that the judgment in the Smith Case precludes A&S Realty from disputing that it was negligent or that its conduct was of a type that could generally cause the Plaintiff's injuries. A&S Realty opposes the motion.

## II. DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III. ANALYSIS

"Issue preclusion, or collateral estoppel, prevents parties from relitigating an issue that has already been actually litigated." *Peloro v. United States*, 488 F.3d 163, 174 (3d Cir. 2007). Courts have recognized four essential elements that govern the applicability of issue preclusion: "(1) the issue sought to be precluded is the same as that involved in the prior

action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment." *Id.* at 175 (quoting *Burlington N. R.R. Co. v. Hyundai Merch. Marine Co.*, 63 F.2d 1227, 1231-32 (3d Cir. 1995) (quoting *In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992))) (internal quotation marks removed); *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322 n.5 (1979); *Clarenbach v. Consol. Parts*, 17 V.I. 123, 129 (V.I. Terr. Ct. 1980) (applying four-part test). Courts traditionally have also required mutuality--that is, "that the parties on both sides of the current proceeding be bound by the judgment in the prior proceeding." *Id.* (citing *Parklane Hosiery*, 439 U.S. at 326-27). More recently, however, Courts have held that "a litigant may be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary." *Id.* (citing *Blonder-Tongue Labs, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 324 (1971); *Parklane Hosiery*, 439 U.S. at 329); *see also Clarenbach*, 17 V.I. at 131 (recognizing that the Restatement (Second) of Judgments permits non-mutual issue preclusion).

The plaintiffs assert that, given the litigation in the Smith Case, A&S Realty is estopped from denying its negligence or from denying that its conduct was of a type that could generally cause the Plaintiff's injuries.

**A.    Negligence**

The gravamen of both the complaint in this case and in the Smith Case is that A&S Realty's negligent construction and maintenance of the building allowed mold to fester, which in turn caused the plaintiff's injuries. Moreover, there can be no dispute that the issue of negligence was actually litigated in the Smith Case; that that issue was essential to the final judgment; and that a final judgment on the issue of negligence has now been entered.

However, in the Virgin Islands, the elements of a negligence suit are well established: "duty, breach of duty, causation and damages." *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 571 (D.V.I. 2004) (quoting *Gass v. V.I. Tel. Corp.*, 149 F. Supp. 2d 205, 209 (D.V.I. 2001) (quoting *Logan v. Abramson Enters., Inc.*, 30 V.I. 72, 73 (D.V.I. 1994)); *see also* RESTATEMENT (THIRD) OF TORTS, § 3.[2]

Included within the concept of causation are two separate species: "general" causation and "specific" or "individual" causation. In the toxic-tort context, "General causation has typically been understood to mean the capacity of a toxic agent . . . to cause the illness complained of by plaintiffs." *In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1129

---

[2] In the Virgin Islands, "[t]he rules of the common law, as expressed in the restatements of the law . . . shall be the rules of decision in the courts of the Virgin Islands . . . in the absence of local laws to the contrary." V.I. CODE ANN., tit. 1, § 4.

(9th Cir. 2002); *see also Jack v. Glaxo Wellcome, Inc.*, 239 F. Supp. 2d 1308, 1321 (N.D. Ga. 2002) ("General causation is the capacity of a product to cause injury . . . ."); *Goebel v. Denver & Rio Grande W. Ry. Co.*, 346 F.3d 987, 990 (10th Cir. 2003) ("[G]eneral causation[] mean[s] that the particular circumstances . . . *could* have caused [the plaintiff]'s injury, specific causation is proof that the product in question caused the injury of which the plaintiff complains").

Once general causation is established with respect to a particular toxic agent, the plaintiff must then "pro[ve] that the product in question caused the injury of which the plaintiff complains." *Jack*, 292 F. Supp. 2d at 1321; *see also Goebel*, 346 F.3d at 990 ("Specific causation[] mean[s] that those circumstances *did in fact* cause [the plaintiff]'s injury." (emphasis original)); *Hanford Nuclear Reservation Litig.*, 292 F.3d at 1129 (" 'individual causation' answers whether that toxic agent actually caused a particular plaintiff's illness.")

Although the jury in the Smith Case found that the toxic agent in the Marshall Building was both the general and specific cause of Smith's injuries, it made no such specific finding with respect to any of the Plaintiffs in the present case. Indeed, it could not possibly have done so, since there was no evidence on the record before the jury regarding whether the toxins caused any of the specific ailments of which the Plaintiffs now

complain. Rather, the only issue then before the jury was solely whether those toxins caused Smith's injuries. The Plaintiffs offer no authority, and the Court is aware of none, for the proposition that a finding of specific causation with respect to a particular person and a particular injury can be imputed to another person complaining of a different injury. *Cf. Dodge v. Cotter Corp.*, 203 F.3d 1190, 1200 (10th Cir. 2000) ("[W]e cannot transpose a general finding that substances were released . . . to bar [the defendant] from contesting the range of its conduct and duties as alleged in a second action to determine its liability"). Accordingly, the Court will deny the Plaintiff's motion with respect to the issue of negligence.

**B.     General Causation**

In the alternative, the Plaintiffs argue that the doctrine of collateral estoppel does apply to the narrower issue of general causation. As noted above, "General causation . . . mean[s] the capacity of a toxic agent . . . to cause the illness complained of by plaintiffs." *In re Hanford Nuclear Reservation Litig.*, 292 F.3d at 1129.

The claim of general causation in this case and the Smith Case are identical. Both Smith and the Plaintiffs claim that the mold in the Marshal Building is capable of causing the injuries they complain of. The issue of general causation was certainly litigated in the Smith Case. Proving general causation was also

essential to Smith's claims, since if the jury had not found the mold was capable of causing injury, it certainly could not have found it the cause of Smith's specific injury.

Even where the elements of collateral estoppel are satisfied, when a party seeks to apply the doctrine offensively, trial courts have "broad discretion to determine when it should be applied." *Parklane Hosiery*, 439 U.S. at 331. In particular, courts should not apply the doctrine when it "would be unfair to a defendant . . . ." *Id.* In this vein, courts have considered whether applying offensive collateral estoppel would significantly promote judicial economy, and whether scientific testimony on which a prior verdict was based was truly reliable and unlikely to change with future advancements. *See, e.g.*, *In re TMI Litig.*, 193 F.3d 613, 726-27 (3d Cir. 1999) (holding that it was error for district court to apply collateral estoppel to claims of illness arising from radiation exposure when there was not yet any scientific consensus on precise dose levels necessary to cause illness); *Clark v. SmithKline Beecham*, Civ. Action No. 7:06-cv-30 (HL), 2006 WL 3329141, at *3 (M.D. Ga. Nov. 15, 2006) (declining to apply doctrine of collateral estoppel to issue of general causation in claim arising from serious side-effects of the drug Paxil because relitigating issue would impose only some additional costs and it seemed

unwise "to freeze science in place from a 2001 verdict without taking into account subsequent advances").

In the present case, it is unclear how granting summary judgment on the issue of general causation will save substantial time and resources. Plaintiffs would likely have to elicit at least some testimony as to general causation in order to prove specific causation. Moreover, A&S Realty would be free to defend the Plaintiffs' claims by adducing testimony on the issue of general causation. This is because if the mold in the Marshall Building were incapable of causing any injury, it certainly could not be the specific cause of the Plaintiffs' injuries.

Additionally, the verdict in the Smith Case was predicated in part upon expert testimony which the Court found to be of questionable reliability, to say the least. In particular, the Court expressed serious doubts about the reliability and qualifications of Smith's structural engineering expert David Thibodeau ("Thibodeau"), who opined that the construction and maintenance of the Marshall Building was the cause of high moisture levels in the building which in turn fostered mold growth. True, the Court did not find the admission of Thibodeau's testimony to rise to the level of warranting a new trial. However, the Court is not at this point persuaded that the scientific testimony underpinning the verdict in the Smith

Case is so reliable that it can bind A&S Realty in all subsequent litigation.

More generally, there is not as yet a clear consensus in the scientific community about the effects of mold exposure. *See, e.g.*, *Young v. Burton*, 354 F. App'x 432, 432 (D.C. Cir. 2009) (holding that "even taking a broad view of 'substance' to include 'water-damaged building' and accepting that 'mold-illness' as a real disease there is no generally accepted consensus in the scientific community that exposure to a water-damaged building causes 'mold-illness.' "); *Flores v. Allstate Tex. Lloyd's Co.*, 229 F. Supp. 2d 697, 702 (S.D. Tex. 2002) (noting absence of reliable proof of causation where medical expert had not based "his testimony on the results of any testing done to determine whether Plaintiffs [were] allergic to any specific type of mold found in their home"); *Roche v. Lincoln Property Co.*, 278 F. Supp. 2d 744, 764 (E.D. Va. 2003) ("An opinion based primarily, if not solely, on temporal proximity does not meet *Daubert* standards."); *see generally* Jeffrey J. Hayward, *The Same Mold Story?: What Toxic Mold is Teaching Us about Causation in Toxic Tort Litigation*, 83 N.C. L. Rev. 518, 536–38 (2005) (collecting cases).

Further, the Court has reservations about how the jury might be instructed on the issue of general causation. The jury could not simply be told that "exposure to mold may cause

illnesses in some people," without explaining the levels of exposure necessary to cause those illnesses, the characteristics, if any, of that population of "some people" who might develop illnesses, and without making some judicial determination about what illnesses mold may or may not cause. Such facts were simply not established in the Smith Case with sufficient precision for the Court to confidently craft an instruction that would not lead to prejudice or confusion.

The Court thus finds that the prejudice and confusion resulting from the application of collateral estoppel would outweigh whatever little benefit it might achieve. Accordingly, the Court will deny the Plaintiffs' motion for summary judgment.

An appropriate order follows.

                                                S\_____
                                                    Curtis V. Gómez
                                                    **Chief Judge**